|126    129.
|135    587

</div>

## FREUD v. RUHL.

SUBROGATION — EXECUTION SALE — REDEMPTION BY MORTGAGEE UNDER DECREE OF FORECLOSURE—RIGHTS OF SURETY.

> A mortgagee, after obtaining a decree of foreclosure of his mortgage, which was given by a husband and wife to secure a debt of the husband, and covered land owned by them in undivided moieties, exercised the right to redeem the husband's moiety from an earlier sale on execution against the husband, as provided by 3 Comp. Laws 1897, § 9185. Thereafter, at a sale under the decree of foreclosure, the mortgagee laid claim to the absolute ownership of the husband's moiety by virtue of such redemption proceedings, and, having thus deterred other purchasers, bought in the same, subject to the execution sale, for a nominal sum. The wife's moiety was then sold, being compelled to bear the burden of the entire mortgage. *Held*, that the wife occupied the position of surety with respect to the mortgage debt, and as such had the right of subrogation, and might redeem the land from the mortgage and execution sale upon reimbursing the mortgagee.

Appeal from Wayne; Rohnert, J. Submitted November 14, 1900. Decided March 26, 1901.

Bill by Leopold Freud against Louise Ruhl and others to foreclose a mortgage. There was a decree for complainant, and a sale under the decree, at which complainant and John B. Sevald became the purchasers of separate moieties of the land. Defendant Ruhl appeals from an order denying her petition to redeem. Reversed.

126 MICH.—9.

*Bacon & Yerkes,* for petitioner.

*Keena & Lightner,* for complainant.

*Brennan, Donnelly & Van De Mark,* for defendant
Sevald.

HOOKER, J. Ruhl and wife, Louise, owned undivided
moieties of a certain tract of land. On January 18, 1895,
Clark and wife levied upon the undivided half owned by
Mr. Ruhl an execution against the property of the latter.
A month or so later the Ruhls joined in a mortgage for
$1,000 to Freud. Sale on the execution occurred June 5,
1898, and Clark purchased Mr. Ruhl's undivided half for
$4,000. Freud foreclosed his mortgage, and obtained a
decree on May 19, 1899. On September 1, 1899, he
attempted to redeem the land sold on execution, as a judg-
ment creditor, under the statute (3 Comp. Laws 1897, §
9185), and received a deed of the premises from the
sheriff. Sections 9185 and 9195 are as follows:

' Any creditor of a person against whom such execution
issued, having in his own name, or as assignee, represen-
tative, trustee, or otherwise, a decree in chancery, or a
judgment at law, under which execution shall have been
issued and levied upon the real estate so sold, or a decree
which shall be a lien without execution and levy, at any
time before the expiration of fifteen months from the
time of such sale, by paying the sum of money which was
paid on the sale of such premises, together with the
interest thereon, computed at the rate borne by the judg-
ment under which such sale was made, from the time of
such sale, shall thereby acquire all the rights of the
original purchaser, subject to be defeated in the manner
hereinafter mentioned.''

"To entitle any creditor to acquire the title of the
original purchaser, or to become a purchaser from any
other creditor, pursuant to the preceding provisions, he
shall present to and leave with such purchaser or creditor,
or the officer who made the sale, or with said register, the
following evidence of his right: (1) A certified copy of
the judgment or decree under which he claims the right
to purchase. (2) A true copy of all the assignments of
such judgment or decree which are necessary to establish

his claim, verified by his affidavit, or the affidavit of some witness thereto. (3) An affidavit by such creditor, his agent or attorney, of the true sum due on such judgment or decree at the time of claiming such right to purchase."

It is claimed that this deed was void, and that Freud acquired no title, because of noncompliance with the statute in the following particulars, viz. :

1. That the statutory affidavit was not entitled in any cause, or attached to any record showing the title of the cause.

2. That the paper filed at the same time, purporting to be a certified copy of the decree, was not in fact a copy of such decree.

Freud caused the premises to be sold under the decree of foreclosure, the undivided half interest of Ruhl being sold first. It was purchased by Freud for $10, subject to the execution sale. Others were present, who were deterred from bidding by the claim of Freud that he was absolute owner under the execution proceedings and sheriff's deed, and that the mortgage lien was cut off thereby. The other undivided half was bid in subject to the mortgage. Upon the filing of the report of sale by the commissioner, Louise Ruhl filed exceptions to such report, and also filed a petition asking the court to set aside the sheriff's deed, and that the amount paid by Leopold Freud to the sheriff be decreed to be a redemption of said property from said sale, for the protection of the interests of all parties interested in said premises, and that the sale of the premises under the decree be set aside and a resale ordered, and petitioner be permitted to redeem from said mortgage and from the said sheriff's deed.

It seems to be settled by the decisions of New York, from whence we adopted this statute, that this right given a creditor to redeem is a gratuity. Manifestly, he will not redeem unless there is a supposed margin of value; and justice would seem to demand that such margin should be applied upon his claim against the debtor, as is held in Indiana under a statute which seems to require it.

See *Rice* v. *Puett*, 81 Ind. 237. But it is otherwise in New York. Thus, in *Emmet's Adm'rs* v. *Bradstreet*, 20 Wend. 50, it was held that a creditor, by redemption, takes title and stands in place of the purchaser, whose title was perfect against the debtor. The redeeming creditor is bound to extinguish intermediate liens, and so far the debtor is benefited; but the judgment of the redeeming creditor remains unaffected. In *Van Horne* v. *McLaren*, 8 Paige, 285 (35 Am. Dec. 685), it was said:

"Again, the title which a purchaser or redeeming creditor acquires to a piece of land is derived from the judgment under which the sale is made, and not under that by force of which it was redeemed. The title of which the defendant was seised at the docketing of the former judgment is conveyed by the sheriff, and no allusion is made in the deed to the judgment under which the redemption took place. This circumstance, it appears to me, is decisive against the ground assumed by the plaintiff. Nor is this view of the case changed by the fact that the defendant in this case will make a speculation by being permitted to hold the advantage derived by his redeeming. If such considerations were allowed to influence the court, every sale of real estate under an execution might lead to a bill in equity, and a reference must be had to ascertain how much the redeeming creditor must allow on his judgment out of the profits of the speculation. This cannot be done. It is far better to leave parties to regulate the prices they will give for property themselves than that the court should make bargains for them. Cases of fraud, accident, or mistake may be aided by this court; but everything else may be safely confided to the keen-eyed vigilance and sagacity of the parties. * * *

"And in the recent case of *Emmet's Adm'rs* v. *Bradstreet*, 20 Wend. 50, the same court decided that the redemption by the junior creditor was no bar to an action to enforce the payment of his judgment, although the value of the lands redeemed exceeded the amount of the judgment and the redemption money. This being the settled rule of law on the subject, there is no principle of equity which calls upon this court to establish a different rule here. Although the redeeming creditor may have made a good speculation by redeeming from the first sale, he did not make it at the expense of or for the benefit of

the judgment debtor, whose right to redeem was forever gone. The latter is not, therefore, entitled to the benefit of the speculation, for which he neither furnished funds nor ran any risk."

We find it unnecessary to pass upon this question. Freud's decree gives support to Mrs. Ruhl's claim that she was a surety, and as such she is entitled to reimbursement from any security that he may have for his debt. He is, in equity, under obligation to surrender to her whatever property he may have of Ruhl's that is subject to this claim. He need not have redeemed this land, it is true; but he chose to do so. He applied the equity in this land, to the extent of $10, to the debt, but refused to do more, and claimed it was cut off. We think he should not be thus permitted to collect the debt from the surety, and at the same time speculate out of the property of the principal through his statutory right of redemption. She should have a right of subrogation, and it is no hardship that his redemption should be for her benefit as well as his.

We find it unnecessary to pass upon other questions. The order of the circuit court will be modified, and the defendant Louise Ruhl will be permitted to redeem the two parcels of land by reimbursing complainant for the expense of redemption and the amount of the decree and costs in the foreclosure proceeding within 60 days, in which case he shall convey to her, by good and sufficient deed of conveyance, his title to the property so redeemed by him. If she shall fail to redeem within that time, the order of the circuit court will be affirmed, with costs of this court. Otherwise, defendant will recover costs of this court.

MOORE, LONG, and GRANT, JJ., concurred. MONTGOMERY, C. J., took no part in the decision.